## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-24229-COOKE/DAMIAN

PNC BANK, N.A., *a Delaware limited
liability company*,

      Plaintiff,

vs.

COLMENARES BROTHERS, LLC, *a Florida
limited liability company*, and JOSE A.
COLMENARES, *an individual*,

      Defendants.

_____/

### REPORT AND RECOMMENDATION ON PLAINTIFF'S
### MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT [ECF NO. 23]

THIS CAUSE is before the Court on Plaintiff, PNC Bank N.A.'s ("PNC"), Motion for Entry of Default Final Judgment against Defendants, Colmenares Brothers, LLC ("Colmenares LLC") and Jose A. Colmenares ("Mr. Colmenares") (collectively, "Defendants"), filed May 13, 2022 (the "Motion") [ECF No. 23]. This matter was referred to the undersigned by the Honorable Marcia G. Cooke, United States District Judge, for a Report and Recommendation. [ECF No. 24]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has considered Plaintiff's Motion and supporting documents and the pertinent portions of the record and is otherwise fully advised in the premises. The undersigned observes that Defendants did not file a response to the Motion, and the time to do so has passed. For the following reasons, it is recommended that Plaintiff's Motion for Entry of Default Final Judgment [ECF No. 23] be denied without prejudice in accordance with this Report and Recommendation.

## I.     PROCEDURAL POSTURE

On December 1, 2021, PNC filed a Complaint against Defendants for breach of line of credit ("LOC") agreement and breach of guaranty. [ECF No. 1]. PNC filed an Amended Complaint (now the operative pleading)[1] on December 13, 2021. [ECF No. 8]. Defendants were served by substitute service with the Summons and Amended Complaint on March 5, 2022 [ECF Nos. 14 and 15], and failed to timely appear or respond. After Defendants failed to appear, PNC moved for entry of default against Defendants [ECF Nos. 19 and 20], which the Clerk of Court subsequently entered on April 7, 2022. [ECF No. 21]. PNC now moves for entry of default judgment, pursuant to Federal Rule of Civil Procedure 55(b)(2), against Colmenares LLC on its claim for breach of LOC Agreement (Count I) and against Mr. Colmenares on its claim for breach of guaranty (Count II). [ECF No. 23].

As of the date of this Report, Defendants have not responded to the Amended Complaint, the Motion, nor any other filings in this case. Nor has an attorney made an appearance on Defendants' behalf.

## II.    BACKGROUND

### A.   *The LOC Agreement*

As alleged in the Amended Complaint, on October 9, 2019, Defendants executed a Business Loan Application (the "Loan Application") to establish a $100,000.00 revolving line of credit with PNC. [ECF No. 8 ("Am. Compl.") at ¶ 6]. A copy of the Loan Application is attached to the Amended Complaint. [ECF No. 8-1, Ex. A]. On October 10, 2019, in connection with the Loan Application, PNC issued a Business Banking Line of Credit

---

[1] Plaintiff filed the Amended Complaint solely for purposes of substituting a redacted version of the LOC Agreement to the original complaint. [ECF No. 8 at 1, n.1].

Agreement Terms and Conditions (the "LOC Terms and Conditions") to Colmenares LLC. (Am. Compl. at ¶ 7). A copy of the LOC Terms and Conditions is attached to the Amended Complaint. [ECF No. 8-2, Ex. B]. The Loan Application and the LOC Terms and Conditions (hereinafter, the "LOC Agreement") constitute a Business Banking Line of Credit Agreement by which Colmenares LLC established a $100,000.00 revolving line of credit agreement with PNC. (Am. Compl. at ¶ 8). Pursuant to the LOC Agreement, PNC agreed to extend a loan in the maximum principal amount of $100,000.00 to Colmenares LLC (*id.* at ¶ 9). PNC alleges that Colmenares LLC borrowed and PNC advanced the full principal amount of $100,000.00 to Colmenares LLC, which was marked as Financial Transaction Number 2070933-100119 (the "Loan") (*id.* at ¶ 10).

The LOC Agreement provides that Colmenares LLC would be in default under the LOC Agreement if, among other things, Colmenares LLC failed to pay any payment when it was due. (*Id.* at ¶ 11; *see also* LOC Agreement at ¶ 17). The LOC Agreement further provides that, in the event of a default, PNC has the right to: (i) declare the entire outstanding principal, unpaid interest, and charges under the LOC Agreement to be immediately due and payable to PNC; (ii) increase the interest margin up to five percentage points (5%) over the variable interest rate on the Loan; and (iii) require that Colmenares LLC pay costs incurred by PNC in the collection of the outstanding amounts, including attorney's fees and court costs. (Am. Compl. at ¶ 12; *see also* LOC Agreement at ¶ 18).

PNC alleges that since June 10, 2021, Colmenares LLC has failed to timely make the required payments when due under the LOC Agreement. (Am. Compl. at ¶ 13). On August 16, 2021, PNC sent Mr. Colmenares, as President of Colmenares LLC, a Demand for Payment Letter (the "Demand Letter") informing Defendants that they were in default under

the LOC Agreement and demanding immediate repayment of the full outstanding amount of the Loan on or before August 30, 2021. (*Id.* at ¶ 14). A copy of the Demand Letter is attached to the Amended Complaint. [ECF No. 8-3, Ex. C].

PNC alleges that Defendants have failed to cure their default under the LOC Agreement and that as of the date of filing the Amended Complaint, there was currently $101,732.01 due and owing from Defendants to PNC, inclusive of principal in the amount of $99,972.10 and interest in the amount of $1,759.91. (Am. Compl. at ¶ 15). PNC further alleges that the full accelerated amount owed under the LOC Agreement is immediately due and payable to PNC (*id.* at ¶ 16).

In support of the Motion, PNC submitted the Declaration of Lisa Anderson regarding the amounts due and owing under the LOC Agreement and Guaranty. [ECF No. 23-3].

### B. *The Guaranty*

PNC further alleges in the Amended Complaint that Mr. Colmenares signed the Loan Application, which included a commitment by Mr. Colmenares to guaranty the obligations of Colmenares LLC to PNC (the "Guaranty"). (Am. Compl. at ¶ 17; *see also* Loan Application at ¶ 3). Pursuant to the Guaranty, for acknowledged consideration, Mr. Colmenares unconditionally guaranteed the prompt payment and performance of all obligations owing by Colmenares LLC to PNC. (Am. Compl. at ¶ 18). PNC alleges that Mr. Colmenares has failed to ensure the prompt payment and performance of Colmenares LLC's obligations under the LOC Agreement, as required by the Guaranty, and, therefore, Mr. Colmenares is also liable for the full accelerated amount owed under the LOC Agreement (*id.* at ¶ 19).

### C.   *Attorney's Fees and Costs*

PNC also alleges that the LOC Agreement provides that PNC is entitled to recover its costs and expenses, including attorneys' fees, incurred through the enforcement of its rights under the LOC Agreement. (*Id.* at ¶ 21; *see also* LOC Agreement at ¶ 18). In support of its claim for fees and costs, PNC submitted the Affidavits of attorneys John T. Rogerson, III and Michael D. Lee. [ECF Nos. 23-4; 23-5].

### III.   APPLICABLE LEGAL STANDARDS

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. The entry of a default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002) (quoting Fed. R. Civ. P. 55(a)). Before entering default judgment, the Court must ensure that it has jurisdiction over the claims and parties and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2]

"Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for a sufficient basis for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) (*quoting Surtain v. Hamlin Terrace Found.,* 789 F.3d 1239, 1245 (11th Cir. 2015) (cleaned up)). Conceptually, then, a motion for

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

default judgment is like a reverse motion to dismiss for failure to state a claim. *Surtain*, 789 F.3d at 1245. Thus, before entering a default judgment for damages, a court must ensure that the well-pled allegations in the complaint (which are taken as true due to the default) state a substantive cause of action and provide a sufficient basis for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

Once liability has been established, the court must assess the damages sought by examining the affidavits submitted. *See, e.g., Svetlick v. Lucius*, No. 08-61525, 2009 WL 1203925, at *1 (S.D. Fla. May 1, 2009) (Zloch, J.) (awarding default judgment as to "the precise amount of damages, including actual damages as well as liquidated damages" pursuant to the agreement between the parties). After entry of a default judgment, damages may be awarded "without a hearing if the amount claimed is a liquidated sum or one capable of mathematical calculation, so long as all essential evidence is a matter of record." *Evans v. Com. Recovery Sys., Inc.,* No. 13-61031-CIV, 2013 WL 12138555, at *1 (S.D. Fla. Aug. 26, 2013) (Scola, J.) *(quoting S.E.C. v. Smyth*, 420 F.3d 1225, 1231-32 n.13 (11th Cir. 2005) (cleaned up)). A district court "may conduct hearings . . . when, to enter or effectuate [a default] judgment, it needs to: . . . determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter." Fed. R. Civ. P. 55(b)(2); *see also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion"). "After ascertaining the appropriate amount of damages, the Court must enter final judgment in that amount." *Cincinnati Ins. Co. v. GC Works, Inc.*, No. 21-cv-21159, 2022 WL 787952, at

*4 (S.D. Fla. Feb. 25, 2022) (Damian, J.), *report and recommendation adopted*, 2022 WL 783285 (S.D. Fla. Mar. 15, 2022) (Cooke, J.)).

## IV.   DISCUSSION

With the foregoing in mind, the undersigned turns to the allegations in the Amended Complaint and PNC's Motion. PNC moves for entry of a default judgment on its claims for breach of the LOC Agreement and the Guaranty. The undersigned first addresses whether the Court has subject matter jurisdiction over this action.

### A.   *Subject Matter Jurisdiction*

As courts of limited jurisdiction, we are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). To that end, a "district court may act *sua sponte* to address the issue of subject matter jurisdiction at any time." *Herskowitz v. Reid*, 187 F. App'x 911, 912–13 (11th Cir. 2006) (footnote and citations omitted). Consequently, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala.*, 168 F.3d at 410.

The plaintiff has the burden of establishing federal subject matter jurisdiction. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). A district court must have jurisdiction under at least one of the three types of subject matter jurisdiction: (1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *PTA-FL, Inc.*

*v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016). A court must dismiss the plaintiff's complaint if it determines that jurisdiction is lacking. Fed. R. Civ. P. 12(h)(3).

In the Amended Complaint, Plaintiff alleges that this Court has diversity jurisdiction over this case. (*See* Am. Compl. at ¶ 1). A federal court has diversity jurisdiction over civil actions where there is a complete diversity of citizenship among the opposing parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a).[3] There is complete diversity where "no plaintiff is a citizen of the same state as any defendant." *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013).

### 1.    Defendant Colmenares Brothers, LLC

The Amended Complaint alleges that Defendant Colmenares Brothers, LLC is "an active Florida limited liability company with its principal place of business in Aventura, Florida." (Am. Compl. at ¶ 4).

The Eleventh Circuit has held that "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). Thus, to properly allege the citizenship of a limited liability company, "a party must list the citizenships of all the members of the limited liability company[.]" *Id.* Moreover, the general allegation, based upon information and belief, that no member of a limited liability company is the citizen of a particular state is insufficient to carry the plaintiff's burden of alleging complete diversity of citizenship between the parties. *Diverse Staffing Servs., Inc. v. Consultative Sales Pros.*, No. CV421-028, 2022 WL 1271726, at *2 (S.D. Ga. Apr. 28, 2022) (citing *Toms v. Country Quality Meats, Inc.*, 610 F.2d

---

[3] The Amended Complaint adequately alleges the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

313, 316 (5th Cir. 1980) ("[W]hen jurisdiction depends on citizenship, citizenship should be distinctly and affirmatively alleged." (citation and quotation marks omitted))).

In the Amended Complaint, PNC makes no representation or showing regarding the citizenship of each of Colmenares Brothers, LLC's members. Therefore, the Amended Complaint fails to sufficiently allege the citizenship of Defendant Colmenares Brothers, LLC for purposes of establishing diversity jurisdiction in this case.

### 2.   Defendant Jose A. Colmenares

The Amended Complaint alleges that Defendant Jose A. Colmenares is "a citizen of the State of Florida, and resides in Miami, Florida." (Am. Compl. at ¶ 5).

"In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). Pleading residency is not the same as pleading domicile. *PNC Bank Nat'l Ass'n v. Schwiekhardt*, No. 13-cv-282, 2013 WL 4747052, at *1 (M.D. Fla. Sept. 4, 2013). "Residency is necessary, but insufficient, to establish [a natural person's] citizenship in a state." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021) (citing *Travaglio*, 735 F.3d at 1269). Rather, "a natural person is a citizen of the state in which he is domiciled." *Id.* (citation omitted). A person's domicile "consists of two elements: residency in a state and intent to remain in that state." *Id.* (citation omitted).

The undersigned finds that the Amended Complaint, which alleges that Defendant Jose Colmenares is a citizen of Florida and resides within this jurisdictional district, sufficiently alleges Jose Colmenares's citizenship for purposes of establishing diversity jurisdiction.

### 3.    Plaintiff PNC Bank, N.A.

In the Amended Complaint, PNC alleges that it is a "corporation formed under the laws of the State of Delaware with its principal place of business located in Pittsburgh, Pennsylvania." (Am. Compl. at ¶ 3).

"All national banking associations shall, for purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. Accordingly, "[f]or diversity jurisdiction purposes, a national bank is a citizen of the State designated in its articles of association as its main office." *PNC Bank, Nat'l Ass'n v. Suite 208 Holdings, LLC*, No. 17-cv-1433, 2017 WL 9834352, at *3 (M.D. Fla. Dec. 15, 2017) (citing *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006)).

PNC does not allege the State designated in its articles of association as its main office. Therefore, PNC has not sufficiently pled its citizenship.

The undersigned notes that this is not the first time PNC has been alerted to the fact that merely pleading its principal place of business is insufficient for purposes of establishing diversity jurisdiction. *See Suite 208 Holdings*, 2017 WL 9834352, at *3 (finding PNC's allegation that its principal place of business was in Pennsylvania insufficient to establish its citizenship for purposes of diversity jurisdiction); *Schwiekhardt*, 2013 WL 4747052, at *1 (same). PNC may address this issue through an affidavit or some other affirmative evidence demonstrating that the parties are completely diverse. *See Travaglio*, 735 F.3d at 1270 ("[W]e consistently have required some evidence to assure us jurisdiction exists before we will ignore defective jurisdictional allegations that the plaintiff does not amend."). PNC did not provide such an affidavit in this case.

In sum, the Amended Complaint fails to sufficiently allege the citizenship of Defendant Colmenares Brothers, LLC and of Plaintiff, PNC Bank, N.A., for purposes of establishing that the parties are completely diverse, and, in turn, that this Court has subject matter jurisdiction over this case on the grounds of diversity of citizenship.

Because the undersigned concludes that there is no subject matter jurisdiction, the Court's consideration of the case should end here. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1240 (11th Cir. 2003) (noting "[i]f the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action . . . *sua sponte*, if necessary[.]" (citations omitted)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Notwithstanding, the undersigned will proceed to consider the merits of PNC's Motion for the sake of completeness. The undersigned first addresses Defendants' liability to PNC for purposes of entering default judgment and then ascertains the requested damages and fees.

## B.  *Liability*

### 1.  Breach Of The LOC Agreement

In Count I of the Amended Complaint, PNC alleges breach of contract based on Defendant, Colmenares, LLC's, alleged breach of the LOC Agreement. (Am. Compl. at ¶¶ 23–29).

Because the contract at issue provides that "[u]nless preempted by federal law, all other substantive terms and provisions . . . shall be governed by and construed in accordance with the laws of the State of Delaware, excluding its conflict of laws rules," the undersigned applies Delaware law to interpret its provisions. (LOC Agreement at ¶ 31). Under Delaware law, the

elements of a breach of contract claim are: (a) the existence of a contract; (b) the breach of an obligation imposed by that contract; and (c) resulting damages to the plaintiff. *Lorenzetti v. Hodges*, 62 A.3d 1224 (Del. 2013).

PNC alleges the following facts in Count I of the Amended Complaint: (1) a contract exists between PNC and Colmenares LLC, as evidenced by the LOC Agreement (Am. Compl. at ¶ 25); (2) Colmenares LLC is in material breach of the LOC Agreement by way of default (*id.* at ¶ 27); and (3) PNC has suffered damages for the outstanding principal amount due plus the unpaid interest required under the LOC Agreement (*id.* at ¶ 29). Thus, PNC met its pleading obligations as to the cause of action for breach of contract in Count I. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

Therefore, the undersigned finds that if the Court had subject matter jurisdiction, the substantive well-pled allegations of fact in Count I of PNC's Amended Complaint, which Colmenares LLC admits due to the default, sufficiently allege that PNC is entitled to relief for breach of the LOC Agreement under Delaware law.

### 2.   Breach Of Guaranty

In Count II of the Amended Complaint, PNC alleges breach of guaranty against Defendant Jose Colmenares. (Am. Compl. at ¶¶ 30–33).

Under Delaware law, "a contract of guaranty is the promise to answer for the payment of some debt or for the performance of some obligation by another on the default of that third person who is liable in the first instance." *Falco v. Alpha Affiliates, Inc.*, No. Civ.A. 97-494, 1997

WL 782011 (D. Del. Dec. 10, 1997) (citing *Jones Motor Co. v. Teledyne, Inc.*, 690 F. Supp. 310, 313 (D. Del. 1988)). Therefore, the guaranty is a separate contract involving duties and responsibilities which are distinct from the basic contract to which it is collateral. *Id.* (citing *Jones*, 690 F. Supp. at 313, n.4)

PNC alleges the following facts in Count II of the Amended Complaint: (1) Defendant Jose A. Colmenares signed the Guaranty, whereby he committed to guaranty the obligations of Colmenares LLC to PNC (Am. Compl. at ¶ 17); (2) Pursuant to the Guaranty, for acknowledged consideration, Mr. Colmenares unconditionally guaranteed the prompt payment and performance of all obligations owing by Colmenares LLC to PNC (*id.* at ¶ 18); (3) Mr. Colmenares has failed to ensure the prompt payment and performance of Colmenares LLC's obligations under the LOC Agreement, as required by the Guaranty (*id.* at ¶ 19); and (4) As a result of Colmenares LLC's default, PNC has suffered monetary damages for the outstanding principal amount under the LOC Agreement, plus interest, late charges, and attorney's fees and costs (*id.* at ¶ 33). Thus, PNC met its pleading obligations as to the claim for breach of guaranty in Count II. *See* Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678.

Therefore, the undersigned finds that if there was subject matter jurisdiction, the substantive well-pled allegations of fact in Count II of PNC's Amended Complaint, which Mr. Colmenares admits due to the default, sufficiently allege that PNC is entitled to relief for breach of guaranty under Delaware law.

### C. *Damages*

The undersigned next considers PNC's claim for damages and the basis therefore. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters."); *Angelini v. Remasur*

*USA, LLC*, No. 16-21290, 2018 WL 4410008, at *3 (S.D. Fla. May 25, 2018) (Torres, J.) ("Damages may only be awarded if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested."), *report and recommendation adopted sub nom.*, *Angelini v. Gonzalez*, 2018 WL 4409943 (S.D. Fla. June 11, 2018) (Williams, J.).

PNC seeks damages in the amount set forth in the Declaration of Amounts Due and Owing, submitted in support of the Motion. [ECF No. 23-3]. In the Declaration, PNC's Vice President, Lisa Anderson, states that as of the date of the Motion, PNC is owed a total of $105,461.65, inclusive of: (1) $99,972.10 in outstanding principal; (2) $5,341.22 in interest[4] accrued thereon; and (3) $148.33 in late fees. (Anderson Decl. at ¶ 6).

The undersigned finds that the record supports PNC's claim concerning the outstanding principal ($99,972.10) on the Loan. (*See* Am. Compl. at ¶ 15; Mot. at ¶ 7; Anderson Decl. at ¶ 6). On the other hand, PNC's calculations of interest on the Loan through the date of the Motion are not supported by the record. PNC, through the Anderson Declaration, claims that a total of $5,341.22 in interest accrued through May 13, 2022. (Anderson Decl. at ¶ 6). PNC, however, does not explain how it calculated this figure, which, based on the information in the record, appears to be inaccurate. Specifically, the record establishes that Defendants defaulted on the Loan on June 10, 2021, at which time there was an outstanding principal of $99,972.10 on the Loan, which was accruing interest at $14.83 per diem. (*See* Am. Compl. at ¶¶ 13–15; Ex. C to Am. Compl. [ECF No. 8-3]). Thus, based on this evidence, a total of $4,997.71 in interest accrued on the Loan between June 10, 2021 and May 13, 2022 (*i.e.*, 337 days multiplied by $14.83).

---

[4] In the Declaration, Ms. Anderson states that interest continues to accrue at $14.83 per diem.

PNC, likewise, fails to explain how it calculated the amount of late fees sought as part of the damages award. The record establishes that as of August 16, 2021, when PNC sent the Demand Letter, there was a late charge in the amount of $74.55 owed by Defendants. [ECF No. 8-3]. Through the Anderson Declaration, PNC claims that a total of $148.33 in late fees is now due and owing. (Anderson Decl. at ¶ 6). However, there is no explanation in the record regarding the assessment of late fees under the Loan for the Court to ensure that there is a legitimate basis to support the requested amount of late fees as part of the damages award. *See Philpot*, 317 F.3d at 1266; *Angelini*, 2018 WL 4410008, at *3.

In light of the foregoing, the undersigned finds that if there was subject matter jurisdiction, based on the facts alleged by PNC in the Amended Complaint, which are deemed admitted by the Defendants due to the default, and the supporting Anderson Declaration, PNC is entitled to a default judgment in the amount of $104,969.81 (inclusive of: (1) the outstanding principal of $99,972.10; and (2) interest accrued thereon through May 13, 2022 in the amount of $4,997.71), plus interest thereafter at a rate of $14.83 per diem. The undersigned further finds that, on the record presented, there is not a sufficient basis for an award of late fees.

### D.    *Attorney's Fees and Costs*

Having determined that PNC has demonstrated that it would be entitled to a default judgment on its breach of LOC agreement and guaranty claims if the Court had subject matter jurisdiction, the undersigned next considers PNC's request for attorney's fees and costs. Here, an award of attorney's fees is governed by Florida law. *See Trans Coastal Roofing Co. v. David Boland, Inc.*, 309 F.3d 758, 760 (11th Cir. 2002) (where party's claim for attorney's fees sounds

in state law and reaches federal court by way of diversity jurisdiction, federal court applies

substantive law of forum state).

In the Amended Complaint, PNC alleges it is entitled to recover attorney's fees and

costs incurred in this action under the LOC Agreement, which provides in relevant part:

> Upon default, . . . [w]e may hire or pay someone else to help us collect this account if you fail to pay in accordance with this Agreement. You agree to pay our collection costs (including, without limitation, the cost of in-house attorneys and staff), whether or not we hire anyone else to help us collect this account. This includes, subject to any limits under applicable law, our attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services. In addition to all other sums provided by law, you will also pay any court costs if not prohibited by applicable law.

(*See* Am. Compl. at ¶ 21; ECF No. 8-2, at ¶ 18).

PNC seeks to recover $6,123.50 in attorney's fees and $887.71 in costs incurred

through April 22, 2022. (*See* Rogerson Aff. at ¶¶ 16–18). In support, PNC's counsel, John T.

Rogerson, III, a partner at the law firm of Adams and Reese LLP, submitted an affidavit

listing the hours billed by different attorneys and staff at the law firm, including 20.6 hours of

work by partners and associates at a rate of $235.00 per hour,[5] 0.7 hours of work by a paralegal

at a rate of $125.00, and 0.2 hours of work by an administrative assistant at a rate of $100.00

per hour, for a total amount of $4,948.50 in attorney's fees in addition to $887.71 in costs (*id.*

at ¶¶ 3–9, 13–14).

PNC also seeks an additional five hours of attorney time at the rate of $235.00, for an

additional $1,175.00 in fees, which PNC's counsel anticipates will be expended through the

---

[5] The partners and associates at the law firm, whose standard hourly rate ranges from $295.00 to $560.00, reduced their rates across-the-board to $235.00 for this matter. (Rogerson Aff. at ¶ 14).

of entry of default judgment (*id.* at ¶ 17). Therefore, PNC requests fees for 26.5 hours of work for a total of $6,123.50 in fees sought.

### 1. Calculating Attorney's Fees – the Lodestar Method

In determining reasonable attorney's fees in cases where a party is entitled to reasonable fees under a contract, the undersigned looks to Florida state law, which adheres to the lodestar method as developed by federal case law. *See Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1147–48 (11th Cir. 1993). Under the lodestar method applied by courts in the Eleventh Circuit, attorney's fees are calculated by multiplying the number of hours reasonably spent times a reasonable hourly rate. *Id.* at 1147; *see also Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The plaintiff bears the burden of documenting reasonable hours expended and reasonable hourly rates. *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). Additionally, the plaintiff must provide detailed evidence of the hourly rates and time expended so that the Court may properly assess the time claimed for each activity. *Id.*

The Court may review the hourly rate and attorney time for reasonableness based on the twelve so-called "*Johnson* factors," including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in

similar cases. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340–41 (11th Cir. 1999) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

### a) *Reasonable Hourly Rate*

The undersigned must first determine whether PNC has satisfied the burden of establishing that its requested hourly rate is reasonable. A reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436. As for hourly rates, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

PNC requests that the Court compensate: (1) PNC's counsel, as well as other attorneys who worked on this matter, at an hourly rate of $235.00; (2) a paralegal at an hourly rate of $125.00; and (3) an administrative assistant at an hourly rate of $100.00. In support of these rates, PNC submitted the Affidavit of Michael D. Lee, PNC's expert regarding the reasonableness of attorney's fees and hours expended. [ECF No. 23-5]. In the affidavit, Mr. Lee avers that the 21.5 hours expended by PNC's attorneys and staff at the law firm litigating this matter from October 2021 through April 22, 2022, is a reasonable amount of time for the issues in this action. (*Id.* at ¶ 8). Mr. Lee further avers that the hourly rates of $235.00 for partners and $125.00 for paralegals are reasonable and well within the prevailing market rates charged in the South Florida area by lawyers of comparable skill, experience, and reputation for similar services. (*Id.* at ¶ 9).

As previously mentioned, PNC has the burden of establishing a reasonable rate. Initially, the undersigned notes that PNC's Motion and affidavits submitted in support fail to include any information as to the background or experience of attorneys Richard Aguilar and Jamie W. Olinto, partners at the law firm, as well as associate attorneys Brock R. Lilley and Danielle Douglas. The undersigned, however, may turn to its own expertise to determine reasonable hourly rates in the absence of this information. *Norman*, 836 F.2d at 1303.

Upon a review of the record, and the undersigned's consideration of other fee requests and awards in similar types of cases, the undersigned finds that the requested hourly rates, ranging from $100.00 to $235.00 for paralegals, partners, and associates at the law firm who performed work in this matter, to be in the reasonable range of hourly rates for comparable services. In the Southern District of Florida, hourly rates range from $150.00 to as much as $350.00 per hour for the representation of certain institutional clients. These rates, however, may be adjusted according to the number of years of experience that an attorney has. The undersigned finds that PNC's counsel seeks compensation within the prevailing rate range.

Accordingly, PNC's counsel may be compensated at the requested rate of $235.00 per hour based on their respective experience, positions in the law firm, and years of experience as members in good standing of The Florida Bar.

### b) *Reasonable Hours Expended*

The undersigned must next determine whether the number of hours spent on the matter by PNC's counsel is reasonable. Counsel must use "billing judgment" when requesting attorney's fees and must exclude "excessive, redundant, or otherwise unnecessary" hours from any fee petition, irrespective of their skill, reputation, or experience. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Barnes*, 168 F.3d at 427. Although the party requesting attorney's

19

fees must submit evidence sufficient to allow the court to determine that the requested fees are reasonable, "'objections and proof' . . . concerning hours that should be excluded must be specific and 'reasonably precise.'" *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). In addition, "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).

In his affidavit in support of the Motion, PNC's counsel states that 21.5 hours of work were expended by attorneys and staff at the law firm on this matter. (Rogerson Aff. at ¶ 13). Through the Lee Affidavit, also submitted in support of the Motion, PNC asserts this is a reasonable amount of time for the issues in this action. (Lee Aff. at ¶ 8). While a party has a right to attorney's fees incurred in the successful prosecution of a claim, the courts have a corresponding duty to make sure that such award is reasonable. *See Hensley*, 461 U.S. at 433–34. The determination of the amount of fees to award is vested in the sound discretion of the Court. *See Arch Ins. Co. v. GC Works, Inc.*, No. 12-21260, 2013 WL 12181371, at *6 (S.D. Fla. Feb. 4, 2013) (Simonton, J.), *report and recommendation adopted*, 2013 WL 12181694 (S.D. Fla. Feb. 19, 2013) (Seitz, J.). Most importantly, fee applicants bear the burden of supporting their claim by submitting detailed billing records which "show the time spent on the different claims, and the general subject matter of the time expenditures . . . with sufficient particularity so that the district court can assess the time claimed for each activity," as well as "specific and detailed evidence from which the court can determine the reasonable hourly rate." *Norman*, 836 F.2d at 1303 (citations omitted). Where such detailed evidence is lacking, the Court is

still obligated to award a reasonable fee based upon the Court's expertise. *Id.*; *see also Feingold v. Budner*, No. 08-80539, 2009 WL 10667476, at *1 (S.D. Fla. May 26, 2009).

Although PNC did not submit detailed billing records for the Court to determine whether the amounts sought are reasonable, based upon a review of the record as a whole, including the Rogerson and Lee Affidavits submitted by PNC in support of the Motion, the undersigned concludes that the number of hours spent litigating this matter by PNC's counsel, including the requested additional five hours of attorney time totaling an additional $1,175.00 in fees in anticipation of entry of the default judgment, is supported by sufficient evidence to ensure the Court that a legitimate basis exists for the requested fee amount. *See Philpot*, 317 F.3d at 1266; *Angelini*, 2018 WL 4410008, at *3.

### c)  *Calculating the Lodestar and Making Adjustments*

Upon a thorough review of the record, the undersigned concludes that PNC is entitled to recover the calculated lodestar total amount of $6,123.50, which represents 26.5 hours billed by attorneys and staff at hourly rates ranging from $100.00 to $235.00.

After calculating the lodestar method, the Court may apply an across-the-board reduction to the lodestar where "the plaintiff achieved only partial or limited success." *Hensley*, 461 U.S. at 436. The undersigned notes that, generally, courts that have reduced the lodestar due to "partial or limited success" have reduced the lodestar only when the recovery was extremely limited in light of the plaintiff's original claim. *See, e.g., James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1353 (S.D. Fla. 2007). Here, however, if the Court had subject matter jurisdiction and adopted the undersigned's recommendation as to damages that PNC should be awarded, PNC will recover the full amount sought in the Amended Complaint. Thus, no reduction on this basis is appropriate.

Therefore, based upon a determination of the reasonableness of the requested attorney's fees and applying the lodestar rates to the hours devoted to this case as represented in the Rogerson Affidavit, the undersigned concludes that PNC is entitled to recover a total of $6,123.50 in attorney's fees incurred in the prosecution of this matter.

### 2. Calculating Costs

PNC also seeks to recover $887.71 in costs pursuant to the LOC Agreement. Because costs are available to PNC based on the Agreement, the limitations placed on the availability of cost awards by Title 28, United States Code, Section 1920 do not apply. *See Arch Ins.*, 2013 WL 12181371, at *6. The Rogerson Affidavit also sets forth the costs incurred in this action: (a) $402.00 for a filing fee; (b) $369.05 for service of process; (c) $101.17 in courier fees; (d) $11.50 for legal research, and (e) $3.99 for long distance calls. (Rogerson Aff. at ¶ 18). Since Defendants failed to appear or otherwise object to the requested costs, and noting no restriction on the costs available to PNC under the Agreement, the undersigned recommends awarding PNC $887.71 in costs.

### E.   *Deficiencies In The Motion*

On top of the Court's lack of subject matter jurisdiction over this action, which, as discussed above, is sufficient reason alone to deny the Motion, PNC's Motion is deficient in several other respects.

First, the four-page Motion does not incorporate a sufficient memorandum of law to support the entry of default judgment. Local Rule 7.1(a)(1) requires that every motion, subject to certain exceptions, incorporate a memorandum of law citing supporting authorities for the relief requested. *See* S.D. Fla. L.R. 7.1(a)(1); *see also Belony v. Amtrust Bank*, No. 09-82335-CIV, 2011 WL 2297669, at *2 (S.D. Fla. June 8, 2011) (Marra, J.) (finding that a defendant's

"failure to cite any authority . . . [made] it difficult for the Court to rule in [the defendant's] favor" and that the "deficient memorandum of law [was] itself a basis to deny [the] motion"). Here, PNC's Motion cites only to Federal Rule of Civil Procedure 55 without arguing why default judgment is appropriate under the circumstances. (Mot. at ¶ 8). *See Valle v. AA & K Restoration Grp., LLC*, No. 19-cv-20873, 2019 WL 13192198, at *1 (S.D. Fla. Oct. 23, 2019) (Moore, J.) (denying without prejudice unopposed motion for entry of default judgment, in part, because plaintiffs' motion did not include a discussion as to why default judgment is appropriate and did not include argument establishing plaintiffs' entitlement to default judgment).

Although Local Rule 7.1(a)(1) states that an "application for default" and "motion for judgment upon default" do not require a supporting legal memorandum, the Court is unable to enter default judgment where a party has not meaningfully discussed why the requested relief is warranted. *See St. Michael Press Publ'g Co. v. One Unknown Wreck Believed To Be The Archangel Michael*, No. 12-80596-Civ, 2013 WL 12171816, at *1 (S.D. Fla. Feb. 12, 2013) (Brannon, J.) (denying motion for default judgment, in part, because the motion failed to include a legal memorandum, recognizing that "[t]he entry of default judgment is not automatic, and the Court must satisfy itself as to its authority to enter a final [default] judgment against an absent defendant"). Additionally, motions for default judgment must be accompanied by a proposed order. *See* S.D. Fla. L.R. 7.1(a)(2). Here, there is no proposed order attached to the Motion, and the final version of the proposed document was not e-mailed to the Court as required by Local Rule 7.1(a)(2) and Section 3I(6) of the CM/ECF Administrative Procedures. Therefore, there is nothing upon which the Court can rely for justification as to why default judgment is appropriate.

23

Second, a proper motion for default judgment requires argument establishing a plaintiff's entitlement to default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). *See Valle*, 2019 WL 13192198, at *2. "The mere entry of a default by the Clerk [of the Court] does not in itself warrant the entry of a default judgment by the Court." *Garrido v. Linden Contracting Servs., Inc.*, No. 14-cv-60469, 2014 WL 12603170, at *1 (S.D. Fla. Aug. 21, 2014) (Moore, J.). Instead, the Court "must find that there is a sufficient basis in the pleadings for the judgment to be entered." *Id.* (citing *Nishimatsu*, 515 F.2d at 1206). Therefore, "a proper motion for default judgment should state in the liability section of its memorandum of law the elements of each cause of action on which it seeks a default judgment and show with pinpoint citations to the amended complaint how the well-pleaded facts in the amended complaint establish each element." *Valle*, 2019 WL 13192198, at *2 (quoting *Jaguar Imports, LLC v. Phoenix Glob. Ventures, Inc.*, No. 12-cv-1486, 2013 WL 12170484, at *1 (M.D. Fla. Mar. 21, 2013). Here, PNC's Motion does not set forth the elements of the claims and does not demonstrate whether the allegations in the Amended Complaint support entry of default judgment. Additionally, the Motion fails to discuss what law the Court should apply in its determination of Defendants' liability[6] under the LOC Agreement.

Third, in the Motion, PNC asserts it is entitled to attorney's fees, costs, and related expenses incurred in this action. (Mot. at ¶ 8). But PNC fails to set forth the applicable standard for attorney's fees and costs and fails to support its request with a proper memorandum of law demonstrating its entitlement to such request, as required by Local Rule 7.1(a)(1). *See Symphony Med., Inc. v. EGL Eagle Glob. Logistics, LP*, No. 07-21881-CIV, 2008

---

[6] In the Motion, PNC requests that default judgment be entered against Defendants, jointly and severally (Mot. at ¶ 8), however, in the Amended Complaint there are no such allegations of joint and several liability.

24

WL 11408624, at *2 (S.D. Fla. Jan. 14, 2008) (Jordan, J.) (denying plaintiff's request for attorney's fees and costs, "contained in a single sentence of its motion . . . for failure to set out the applicable standard for attorney's fees and costs . . . and for failure to support the request with a memorandum of law" as required by the Local Rules).

Thus, the Motion is deficient, and the undersigned recommends the Motion be denied and PNC be instructed to substantiate its Motion to correct the foregoing deficiencies.

## V.   RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that PNC's Motion for Entry of Default Final Judgment [ECF No. 23] be **DENIED WITHOUT PREJUDICE** and that, in the alternative to dismissal of the action for lack of subject matter jurisdiction, PNC be granted leave to submit evidence demonstrating that this Court has subject matter jurisdiction based on diversity of citizenship or to amend its pleadings to cure the deficiencies in its jurisdictional allegations and that PNC be directed to file a renewed Motion for Default Judgment that complies with the foregoing recommendations, the Local Rules, and the Federal Rules of Civil Procedure.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 29th day of August 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:  Hon. Marcia G. Cooke
            Counsel of Record

26